# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ATRISCO HERITAGE FOUNDATION,**

      **Plaintiff,**

      **v.**                                     **No. 18-CV-937 MV/JFR**

**THE NEW MEXICO COMMISSION**
**FOR COMMUNITY VOLUNTEERISM, et al.,**

      **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss and Supporting Authority (Doc. 18). Plaintiff filed no response. On December 30, 2019, the Court held a status conference to discuss whether Plaintiff intended to pursue this action. Doc. 24. The Court advised Plaintiff that if it intended to respond to Defendants' Motion to Dismiss it would have to seek leave to do so because any response was out of time. *Id.* The Court referred Plaintiff to Rule 6(b) of the Federal Rules of Civil Procedure, which provides that in seeking leave to file an out-of-time response, Plaintiff would have to demonstrate good cause and that it failed to act because of excusable neglect. *Id.* (citing Fed. R. Civ. P. 6(b)(1)(B)). The Court ordered that any motion for leave to file an out-of-time response to Defendants' Motion to Dismiss was due no later than January 13, 2020. *Id.* Plaintiff filed an untimely Motion for Extension of Time to File Response on January 14, 2020. Doc. 25. Plaintiff's response failed to assert any basis of good cause or excusable neglect in connection with its failure to respond to the motion to dismiss and did not provide any substantive response to Defendants' motion. Doc. 25. Instead, Plaintiff made a conclusory request to file an amended

1

complaint; however, it did not submit for consideration a motion to amend or an amended complaint. *Id.* Defendants responded to Plaintiff's motion for extension of time on January 24, 2020. Doc. 26. The Court, having considered the briefs, relevant law, and being otherwise fully informed, finds that Defendants' motion is well-taken and will be **GRANTED.** The Complaint is **DISMISSED** without prejudice. Plaintiff's motion for extension of time is **DENIED**.

## BACKGROUND

The relevant facts as alleged in the Complaint are as follows. Plaintiff The Atrisco Heritage Foundation ("Atrisco") is a New Mexico non-profit foundation that entered into a professional services contract on August 11, 2016, with the State of New Mexico, New Mexico Department of Workforce Solutions ("NMDWS") from September 1, 2016 through August 31, 2017, with options to extend for two years. Doc. 1 ¶ 1, Doc. 1-1 (Professional Services Contract) (hereinafter "the contract"). The amount payable to Plaintiff for the first year was not to exceed $395,192. *Id*. at 1. The scope of Plaintiff's work involved developing a program for student success utilizing AmeriCorps members as coaches in after school and summer programs. Doc. 1-1 at 18-19 (Scope of Work). The contract and its terms and conditions are attached to the Complaint and incorporated by reference. Doc. 1-1 at 27-34.

Named Defendants in this case include: (1) The New Mexico Commission for Community Volunteerism (formerly known as The State Commission on National and Community Service) (hereinafter "the Commission"),[1] and (2) Samuel Sokolove (in his

---

[1] The Commission is a state commission created by Executive Order of the Governor and serves as a conduit for funding AmeriCorps grants to non-profits in New Mexico. *See* Doc. 18.

individual and official capacities as Executive Director of the Commission).  NMDWS is not a named defendant.

Plaintiff alleges that the existence and operation of NMDWS is unlawful because that entity is improperly vested with the ability to administer federal funds for national service programs such as the one at issue here.  Doc. 1 ¶ 12.  The contract was implemented pursuant to a 1990 federal law entitled "The National and Community Service Trust Act of 1990" (hereinafter "NCST").[2]  *Id*. ¶ 40. While the Defendant Commission is rightly established under the Governor's Office to receive and administer funds pursuant to federal laws and state executive orders (*id*. ¶¶ 5-10), Plaintiff claims that NMDWS's operation of such programs violates the NCST, which established the Commission.  *Id*. ¶¶ 5-7.  Defendant Sokolove is the Executive Director of the Commission, and was acting within his scope of duties, under color of federal and state laws at all relevant times.  *Id*. ¶¶ 24-26.

Plaintiff alleges that NMDWS is unlawfully permitted to administer and support the Commission with the allocation of federal funds, which includes the unlawful contract NMDWS entered with Plaintiff.[3]  *Id*. ¶ 33-34.  Instead, Plaintiff argues that its

[2] Plaintiff provides no legal citation to the referenced  law.  Doc. 1 ¶ 8. The Court's own research located the National and Community Service Act of 1990, Pub. L. No. 106-170 § 2 (1990), http://www.learnandserve.gov/pdf/cncs_statute.pdf (current version at 42 U.S.C. § 12501 (2009)) and the National and Community Service Trust Act of 1993, 42 U.S.C. §§ 12501-12655.  The 1990 Act created Serve America, a program targeted at the nation's youth. A primary component of this program was service learning. In 1993, the federal Corporation for National and Community Service ("CNCS") was established, and it merged the work and staff of two predecessor service agencies, ACTION and the Commission on National and Community Service. At its inception, the CNCS managed three main programs: Senior Corps, AmeriCorps and the Learn and Serve America program, formerly known as Serve America. *See* Corporation for National and Community Service, History, Legislation, and Budget, http://www.learnandserve.gov/about/lsa/history.asp.  Most recently, the Edward M. Kennedy Serve America Act was passed, and it reauthorizes and expands the national service programs administered by the CNCS.  *See generally* The Edward M. Kennedy Serve America Act of 2009, 42 U.S.C. § 12501-12655 (2009).
[3] The funding at issue arises from the CNCS, the federal agency established to connect Americans of all ages and

contract should have been between itself and the Commission. *Id.* Plaintiff asserts its claims are, therefore, against the Commission as a principal, based upon conduct arising out of Plaintiff's contract with the Commission's agent, NMDWS. *Id.* ¶ 13. Although NMDWS was the named party to the contract, Defendants Sokolove and the Commission "fully administered, supervised, audited, approved payment and managed the contract." *Id.* ¶ 43.

Ultimately, the relationship between Plaintiff and NMDWS soured, and Defendants placed Plaintiff on probation and then terminated Plaintiff's contract on August 8, 2017, for alleged violations of federal law. *Id.* ¶¶ 45, 56. Defendants suspended Plaintiff's contract on July 24, 2017 without giving the thirty-day advance notice established and required by section 4(B)(2) of the contract and federal regulations, and without providing the required ten days to cure any such deficiencies as also required by the contract and federal regulations. *See* Doc. 1-1 at 3. Plaintiff responded to the July 24, 2017 notice on August 2, 2017, asserting its compliance with the contract terms and seeking clarification about the suspension. Doc. 1. ¶ 61. Plaintiff also complained about Defendants' leadership and poor decision-making during the term of the contract. *Id.* ¶ 62. In addition to suspending the first year of the contract, Plaintiff claims Defendants' actions also breached the subsequent two-year optional terms the contract allowed. Doc. 1 ¶ 61. On August 11, 2017, Plaintiff requested mediation of the dispute with Defendants; instead, Defendants' attorney sent a letter to Plaintiff on August 14, 2017, confirming that Plaintiff's contract was terminated effective August 7, 2017, and that

---

backgrounds with opportunities to give back to their communities and nation. *Id.* ¶¶ 6, 9, 33.

Plaintiff was not eligible to renew the contract for the subsequent two years. Plaintiff was also disbarred from any future contracts. *Id*. ¶¶ 67-68, 123-28. Defendants refused to pay Plaintiff for its services in compliance with section 2(C) of the contract, which requires the Commission to give thirty-days notice to Plaintiff if a statement of accounting is submitted for services but the Commission finds the services are not acceptable, and the contractor must be given the opportunity to take remedial action in order to then get paid within thirty (30) days. *Id*. ¶ 73.

In addition to the wrongful probation and termination of Plaintiff's contract, Plaintiff claims that Defendants violated the 1990 federal law by failing to (1) create a three-year plan, (2) prepare their application process correctly, (3) make technical assistance available, and (4) administer their program. The contract incorporated federal regulations by reference. Doc. 1 ¶ 51. For example, it required Plaintiff to comply with AmeriCorps provisions set forth at 45 C.F.R. parts 2541 and 2542 and Uniform Guidance 2 C.F.R. Subpart E. Doc. 1-1 at 10. The contract required that Plaintiff have a grievance procedure in place in accordance with 45 C.F.R. § 2540.230. The terms and conditions that apply to the contract also refer to non-profit organization circulars and implementing regulations set forth in several additional CFR Parts. Doc. 1-1 at 29. A termination provision contained in the "terms and conditions" attachment to the contract provides that the CNCS's authority to terminate a grant is governed by 45 C.F.R. § 2540.400, and that the Commission may terminate a sub-grantee so long as it affords the sub-grantee "at a minimum, the notice and hearing rights described in 45 C.F.R. § 2540.400." Doc. 1-1 at

32 ¶ 14(B).[4]  Plaintiff, a sub-grantee, contends that Defendants violated this federal

regulation by failing to provide any notice or hearing prior to terminating the contract.

Plaintiff does not allege that CNCS was involved in terminating the contract, and CNCS

is not a party in the Complaint.

After Defendants wrongfully terminated the contract, Plaintiff claims that they

also unlawfully demanded damages of $95,627.43 through disgorgement of profits by

filing a lawsuit against Plaintiff in state court, further breaching their contract and the

implied covenant of good faith and fair dealing.[5]  *See* Doc. 1 ¶ 92, 20-21; Doc. 18 at 12-

22 (*State of New Mexico Dep't of Workforce Sol'ns v. Atrisco Heritage Found.*, D-202-

CV-2018-05054, filed July 5, 2018).  Prior to terminating and ending the contract, the

NMDWS failed to communicate, administer, supervise, audit or properly place Plaintiff

on probation.  Doc. 1 ¶ 48.  Because federal regulations and the terms of the contract

required Defendants to give Plaintiff notice and an opportunity to be heard prior to

suspension or termination, Plaintiff claims that Defendants' actions violated federal law.

Doc. 1 ¶¶ 51-53.  Plaintiff argues that N.M.S.A. § 13-1-30 also demands that federal law

applies here.  That statute provides as follows:

> When a procurement involves the expenditure of federal funds, the
> procurement shall be conducted in accordance with mandatory applicable
> federal law and regulations. When mandatory applicable federal law or
> regulations are inconsistent with the provisions of the Procurement Code,
> compliance with federal law or regulations shall be compliance with the
> Procurement Code.

---

[4] Plaintiff cites to paragraph 13(B) of the contract, and while there is no numbered paragraph 14, the outline suggests that the alleged violation would accurately reference paragraph 14(B).

[5] The total amount paid to Plaintiff during the contract was $123,254.11.  *See* Doc. 18 ¶ 1.

N.M.S.A. § 13-1-30 (1978).

Based on these allegations, Plaintiff filed its Complaint on October 8, 2018, asserting four counts that include causes of action entitled breach of contract/federal question, estoppel, and breach of covenant of good faith and fair dealing (Count I), unjust enrichment (Count II), violation of civil rights and injunctive relief (Count III), and declaratory judgment/federal question (Count IV).

The alleged federal questions raised in the Complaint include claims that Defendants violated Plaintiff's:  (1) Fourteenth Amendment property rights to continued employment and the funds that Plaintiff earned under its contract with the state in violation of 42 U.S.C. § 1983; and (2) notice and hearing procedural due process rights under 45 C.F.R. § 2540.400.  Plaintiff also seeks injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, asking the Court to declare that an actual case in controversy exists based on Defendants' violation of Plaintiff's civil rights.  Doc. 1 ¶¶ 139-43.  Plaintiff also states that its civil rights were violated by the lack of pre-suspension, pre-termination and pre-disbarment notice, and the failure to provide a post-termination hearing after each of those actions.  *Id*. ¶¶ 111-28.  Next, Plaintiff generally alleges an unconstitutional taking[6] based on the government's lawsuit against it in state court because Plaintiff had a vested property interest in the fees to which it was entitled under the contract.  *Id*. ¶¶ 129-36.  Plaintiff seeks punitive damages for Defendants' willful, wanton, and reckless acts, and attorneys' fees pursuant to 42 U.S.C. § 1988.  *Id*. ¶¶ 135-38.

---

[6] Plaintiff does not specifically assert a Fifth Amendment violation.

On May 9, 2019, Defendants filed a motion to dismiss based on lack of subject matter jurisdiction asserting that no federal question exists and that abstention is warranted as a result of the pending state action against Plaintiff, as well as alleging improper venue as a result of the forum selection clause in the contract that calls for application of state law with venue "only in a New Mexico court of competent jurisdiction in accordance with N.M.S.A. § 38-3-1(G) (1978)." Doc. 18. Plaintiff neglected to respond to the motion to dismiss in any manner. Therefore, on May 29, 2019, Defendants filed a notice of briefing complete seeking dismissal based on Plaintiff's failure to timely respond as required by Local Rule 7.1(b). Doc. 19. After direction from the Court on December 30, 2019 regarding Plaintiff's failure to respond, Plaintiff filed an out-of-time motion for extension of time on January 14, 2020, seeking therein to amend its Complaint. Doc. 25. Plaintiff did not file a separate motion to amend, nor did it assert grounds for amending its Complaint, aside from repeating allegations from its original Complaint and stating that it could "further bolster why its claims state a claim upon which relief can be granted." *Id*.

## LEGAL STANDARDS

I.  Rule 12(b)(1) Motion to Dismiss

Under Rule 12(b)(1), a party may assert by motion the defense of the Court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of subject matter jurisdiction "take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which the subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180

(10th Cir. 2002). On a facial attack, the Court considers the complaint's allegations to be true. *Id.* On the other hand, when the motion challenges the factual basis for an action, the Court "may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Rather, the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* Under these circumstances, reference to evidence outside the pleadings does not convert the motion to a summary judgment motion. *Id.*

II.     Rule 15(a) Amendment of the Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . ." Fed. R. Civ. P. 15(a). "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.*; *Duncan v. Manager, Dep't of Safety, City and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (noting that whether to grant leave to amend is committed to the district court's discretion). Generally, leave to amend is refused only "on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan*, 397 F.3d at 1315; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding similarly). The United States Court of Appeals for the Tenth Circuit has held that "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal. In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend. *Duncan*, 397 F.3d at 1315 (citing *Frank U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)); *see also Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027

(10th Cir. 1994) (affirming denial of amendment where plaintiff did not explain his failure to amend the complaint earlier, especially as it was not based on new evidence); *Am. Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304, 1310 (D. Colo. 2001) ("In the Tenth Circuit, a proposed amendment should be denied as futile " '[w]here a complaint, as amended, would be subject to dismissal.'") (citing *Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1389 (10th Cir. 1980)). "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir.1984).

## DISCUSSION

Defendants argue this Court lacks subject matter jurisdiction based on (1) the absence of a federal question (among non-diverse parties) and (2) the existence of a related pending state action. They also ask the Court to dismiss the case because venue is improper based on the contract's forum selection clause that limits Plaintiff's cause of action to New Mexico state court. As set forth herein, the Court agrees that it lacks subject matter jurisdiction and thus need not reach the issues of abstention or improper forum. As further set forth herein, the Court finds that it is not appropriate to allow Plaintiff to amend the Complaint.

I.      Subject Matter Jurisdiction

Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction because Plaintiff merely attempts to recharacterize a breach of contract claim as a violation of federal regulations, and therefore federal law. Federal question jurisdiction

10

exists for all claims "'arising under the Constitution, laws, or treaties of the United States.'"
*Nicodemus v. Union Pac. Corp.,* 318 F.3d 1231, 1235 (10th Cir. 2003) (quoting 28 U.S.C.

§ 1331). "A case arises under federal law if its well-pleaded complaint establishes either that

federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal law." *Id.* (internal quotation marks omitted); *see*

*also Von Loh v. Synthes, Inc.,* 106 F. App'x 665, 667 (10th Cir. 2004). To find jurisdiction under

28 U.S.C. § 1331, two conditions must be satisfied. First, a question of federal law must appear

on the face of Plaintiff's well-pleaded complaint. Second, Plaintiff's cause of action must either

be (1) created by federal law, or (2) if it is a state-created cause of action, its resolution must

necessarily turn on a substantial question of federal law. *Id.* (internal citation and quotation

marks omitted). Plaintiff's complaint alleges three potential areas of federal law as its nexus for

federal question jurisdiction: (1) violation of civil rights based on 42 U.S.C. § 1983 (count III);

(2) breach of contract in violation of federal regulation 45 C.F.R. § 2540.400 (count I); and (3)

declaratory judgment pursuant to 28 U.S.C. § 2201 (count IV).[7]

     A.     <u>Question of Federal Law</u>

     1.     <u>Property Interest Arising Under 42 U.S.C. § 1983</u>

On the face of Plaintiff's Complaint is an allegation that state actors violated § 1983 by

denying Plaintiff's procedural due process rights, namely notice and an opportunity to be heard,

prior to depriving Plaintiff of alleged Fourteenth Amendment property rights to continued

employment and to funds arising under its contract with a state agency operating a federal

---

[7] The Court notes that Plaintiff's request for relief under 42 U.S.C. § 1988 does not create a private cause of action.
*See Moor v. County of Alameda,* 411 U.S. 693, 702 (1973).

program.[8]  As a general matter, claims brought under § 1983 confer federal question jurisdiction. *Grable & Sons Metal Prod. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Local government bodies—like the Commission or its agent NMDWS —are considered "persons" for the purposes of Section 1983.  *Monell v. Dep't of Social Servs. of City of N.Y.,* 436 U.S. 658, 690 (1978).

To make a § 1983 claim for a procedural due process violation, Plaintiff must establish that there is "(1) a constitutionally cognizable liberty or property interest, (2) a deprivation of this interest, and (3) a lack of constitutionally adequate notice and a hearing." *Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).  Here, Plaintiff's alleged deprivation concerns a property right to continued employment under the terms of its service contract, a property interest in the funds that it was paid under the contract that the State attempted to recoup based on Plaintiff's alleged violations of law, and a property interest in the funds that Defendants failed to pay Plaintiff pursuant to the contract.  As a matter of law, none of these alleged property rights constitutes a constitutionally cognizable property interest for purposes of alleging a § 1983 due process violation.

The Supreme Court has held that a simple breach of contract claim does not give rise to a Section 1983 claim.  In *Shawnee Sewerage & Drainage Co. v. Stearns,* the Court held that when a "simple breach of contract is . . . alleged on the part of the city . . . [t]he breach of a contract is

---

[8] Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

neither a confiscation of property nor a taking of property without due process of law." 220 U.S. 462, 471 (1911); *see also Gannett Fleming West, Inc. v. Village of Angel Fire,* 375 F. Supp. 2d 1104, 1108 (D.N.M. 2004) ("Other federal courts have also found that breach of contract claims do not fall within the scope of constitution [sic] violations that § 1983 protects.") (citing *Shawnee.,* 220 U.S. at 471); *Sanders v. Indep. Sch. Dist. No. I-2 of Kiowa Cty., Okla.,* 459 F.2d 51 (10th Cir. 1972) (finding lack of subject matter jurisdiction where plaintiff entered into a one-year teaching contract and alleged that he was wrongfully discharged because action was nothing more than a breach of contract claim, notwithstanding reference to Civil Rights Act).

More recently, the Supreme Court affirmed that, where a state provides a remedy through a breach of contract suit in state court, there is no due process violation where a plaintiff alleges that the state did not pay on a contract. *See Lujan v. G & G Fire Sprinklers, Inc.,* 532 U.S. 189, 195–96 (2001). In *Lujan,* the Court stated:

> Unlike . . . claimants [who had been denied a present right, such as seizure of real property or employment suspension], Respondent has not been denied any present entitlement. [Respondent] has been deprived of a payment that it contends it is owed under a contract, based on the State's determination that [Respondent] failed to comply with the contract's terms. [Respondent] has only a claim that it did comply with those terms and therefore that it is entitled to be paid in full. Though we assume for the purposes of the decision here that [Respondent] has a property interest in its claims for payment, it is an interest, unlike the interests discussed above, that can be fully protected by an ordinary breach-of-contract suit.

*Id.* Accordingly, the Court held: "if California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process." *Id. See also Heath v. City of Fairfax*, 542 F.2d 1236, 1237–38 (4th Cir. 1976) (rejecting police officers' argument that city's failure to pay them salary that they claimed under their contract "rises above the level of a mere breach of contract and becomes an assertion of constitutional rights," noting that such

"a specious theory of federal jurisdiction has been uniformly repudiated"); *Taliaferro v. Willett,* 588 F.2d 428, 428–29 (4th Cir. 1978) (holding that a tenured teacher's claim for continued employment did not present a substantial federal question); *Kilcoyne v. Morgan,* 664 F.2d 940, 942 (4th Cir. 1981) ("The contract may provide a basis for recovery under a breach of promise theory, but that issue is not elevated to a constitutional question solely because the State is a party to the contract. As we have admonished repeatedly (every) disagreement between a public employee with his employer over . . . the terms of his contract [do] not reach constitutional proportions.); *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir. 1987) (alleged deprivation of a pension benefit increase did not "give rise to a cause of action under section 1983").

In the instant case, the very contract giving rise to all of Plaintiff's purported property rights dictates a state remedy for "any lawsuit arising under or out of any term" of that contract. Specifically, paragraph 17 the contract states as follows:

> The laws of the State of New Mexico shall govern this Agreement, without giving effect to its choice of law provisions. Venue shall be proper only in a New Mexico court of competent jurisdiction in accordance with NMSA 1978 § 38-3-1 (G). By execution of this Agreement, Contractor acknowledges and agrees to the jurisdiction of the courts of the State of New Mexico over any and all lawsuits arising under or out of any term of this Agreement.

Doc. 1-1 at 7 ¶ 17. This case thus falls squarely within the holding of *Lujan*: the state's provision of a remedy through a breach of contract suit in state court forecloses Plaintiff's argument that Defendants violated its due process rights by failing to provide continued employment under the terms of the contract, attempting to recoup amounts that Plaintiff was paid under the contract, or failing to pay Plaintiff pursuant to the contract. As the Court found in *Lujan*, the Court assumes for purposes of this motion that Plaintiff "has a property interest in its

claims for payment." *Lujan*, 532 U.S. at 195-96. This interest, however, "can be fully protected by an ordinary breach-of-contract suit." *Id.* Nor do Plaintiff's claims "rise[] above the level of a mere breach of contract and become[] an assertion of constitutional rights," simply because Plaintiff has invoked § 1983 as a vehicle to bring its claims. *Heath*, 542 F.2d at 1237–38. Indeed, "the potential jurisdiction of [§ 1983] cannot be used as a sham for a review of the acts of [a defendant] which do not involve a civil right." *Okla. High Sch. Athletic Ass'n v. Bray,* 321 F.2d 269, 273 (10th Cir. 1963). Plaintiff has not established, as it must, a constitutionally cognizable property interest in continued employment and/or payments under the contract, and thus has failed to allege a § 1983 claim for violation of its due process rights.

### 2. Federal Program Interest Under 45 C.F.R. 2540.400

Plaintiff was the sub-grantee of a federally funded, state-run program. Plaintiff makes reference to, without citing, the Edward M. Kennedy Serve America Act, which is codified at 42 U.S.C. § 12501. However, the specific violation alleged here concerns a federal regulation, 45 C.F.R. § 2540.400, not a federal statute. Plaintiff has not identified a private cause of action under any related federal statute. The Court will not search the uncited statutes for a legal cause of action that most likely does not exist for a sub-grantee such as Plaintiff.[9]

An action arises under 28 U.S.C. § 1331(a) only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles.

---

[9] It is feasible that a taxpayer or non-profit entity may challenge a spending program like the NCST under the narrow exception permitted by the Establishment Clause. *See Am. Jewish Cong. v. Corp. for Nat'l. & Cmty. Serv*., 399 F.3d 351, 355–56 (D.C. Cir. 2005) (recognizing exception to general rule that taxpayers do not have standing to challenge the manner in which the government spends its tax revenue and that the NCST is "at heart a program of disbursement of funds pursuant to Congress' taxing and spending power") (citing *Flast v. Cohen,* 392 U.S. 83, 102 (1968)) (additional citations omitted). However, that is not this case.

*See Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir. 1974). "[T]he fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant that all aspects of its performance or nonperformance are to be governed by federal law rather than by the state law applicable to similar contracts in businesses not under federal regulation." *Virgin Islands Housing Auth. v. Coastal Gen. Const. Servs. Corp.,* 27 F.3d 911, 916–17 (3d Cir. 1994) (citation omitted). Case law concerning the NCST suggests that the opposite is true. *Murray v. Am. Red Cross Capital Area Chapter,* No. 4:07CV161-RH/WCS, 2008 WL 11460707, at *1 (N.D. Fla. 2008) ("From the outset, [this] statute has provided that, with exceptions not applicable here, an AmeriCorps 'participant' . . . who is enrolled in a 'program' receiving AmeriCorps benefits 'shall not be considered a Federal employee and shall not be subject to the provisions of law relating to Federal employment.'") (citing 42 U.S.C. § 12655n(b)(1)).[10] The NCST expressly provides that "[p]articipants and crew leaders shall be responsible to, or be the responsibility of, the program agency administering the program on which such participants, crew leaders, and volunteers work," which in this case was NMDWS and the State of New Mexico. *See* 42 U.S.C. § 12655n(a).

In *Lindy,* the Third Circuit considered a dispute focused on the correct interpretation and effect of contractual documents normally determined by state law. That court concluded that "[t]he fact that these documents were subject to the regulations of [a federal agency] is not significant . . . ." 501 F.2d at 1369. The Supreme Court has cautioned that "'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question

---

[10] The *Murray* court recognizes two narrow statutory exceptions for some AmeriCorps participants deemed federal employees for purposes of federal workers compensation, *see* 42 U.S.C. § 12655n(b)(2), and the Federal Tort Claims Act, 42 U.S.C. § 12655n(b)(3). *See Murray,* 2008 WL 11460707, at *2.

jurisdiction.'" *West 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.,* 815 F.2d 188, 193 (2d Cir. 1987) (quoting *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804 (1986); *see also Weeks Constr., Inc. v. Oglala Sioux Housing Auth.,* 797 F.2d 668, 675 n.8 (8th Cir. 1986) ("[The contractor's] action for money damages may have a connection with activities undertaken as part of functions authorized by federal law, but did not itself arise under federal law and requires only the interpretation and application of contract principles under local law."); *Kunkler v. Fort Lauderdale Housing Auth.*, 764 F. Supp. 171, 174 (S.D. Fla. 1991) ("[t]he mere fact that plaintiff was a participant in a program created by the federal government, or that HUD regulations apply to the contracts at issue does not require the pivotal interpretation of federal law necessary to confer jurisdiction."); *see also Myers v. Countryside Home Loans*, 368 F. Supp. 2d 587, 588–89 (N.D. Tex. 2005) (holding that claim of wrongful foreclosure in violation of HUD regulations did not give rise to federal jurisdiction).  The Court finds that this dispute does not arise under federal law for purposes of finding federal question jurisdiction; instead, it arises under the state-run program that New Mexico administered with federal grant money.[11]

The thrust of Plaintiff's complaint is a state-law claim for relief.  The necessary elements of that claim do not "rise or fall on the resolution of a question of federal law."  *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1026 (10th Cir. 2012) (citation omitted); *see Martinez v. U.S. Olympic Comm.,* 802 F.2d 1275, 1280 (10th Cir. 1986) (holding that complaint alleging

---

[11] The federal statute designates states to carry out the program as follows:

> A State educational agency described in section 12522(2)(A) of this title may designate a statewide entity (which may be a community-based entity) with demonstrated experience in supporting or implementing service-learning programs, to receive the State educational agency's allotment under this part, and carry out the functions of the agency under this part.

42. U.S.C. § 12523(d) (Special Rule).

common-law negligence and conclusory assertions that federal constitutional rights "were violated" and "federal questions [we]re involved" did not satisfy well-pleaded complaint rule). Simply reciting federal statutes and constitutional amendments at the outset of the complaint is not enough to invoke the court's federal question jurisdiction. *See, e.g.*, *Ross v. Enter. Bank & Tr.*, No. 11-2189-JAR, 2011 WL 2112468, at *3 (D. Kan. May 26, 2011) (dismissing a complaint because the plaintiff's "general references to the Securities Exchange Act [were] insufficient" to establish federal question jurisdiction when the complaint's allegations made "no reference to any claim or requirement under federal law"); *Landry v. Davis*, No. 08-3244-SAC, 2009 WL 274242, at *2 & n.2 (D. Kan. Jan. 26, 2009) (dismissing complaint because it did "not present facts establishing federal question jurisdiction" where plaintiff's claims were for state law violations "such as breach of contract or fraud" and "professional negligence"). The Court, therefore, finds that Plaintiff has failed to establish federal question jurisdiction based on alleged violation of the CFR. *See Bricker v. Kansas*, No. 16-CV-02283-DDC-GLR, 2017 WL 568670, at *4–5 (D. Kan. Feb. 13, 2017).

### 3. The Declaratory Judgment Act

Plaintiff also cites 28 U.S.C. § 2201, the Declaratory Judgment Act, as grounds for federal question jurisdiction in this case. However, the Declaratory Judgment Act, in and of itself, does not confer jurisdiction upon federal courts. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n.,* 95 F.3d 959, 964 (10th Cir. 1996). Plaintiff cannot rely on the Declaratory Judgment Act to obtain jurisdiction. *California Cas. & Fire Ins. Co. v. Brinkman*, 50 F. Supp. 2d 1157, 1162 (D. Wyo. 1999). Here, Defendants have already filed a claim against Plaintiff in state court, and Plaintiff merely asks the federal court to declare that it has a federal

cause of action, namely in the nature of state law claims that likely amount to compulsory counterclaims or defenses in the state court action. *See* Rule 1-103 NMRA ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."). Contrary to Plaintiff's request, the Court has found that such "federal questions" do not exist. Therefore, Section 2201 also fails to establish federal question jurisdiction.

B.      A Substantial Federal Issue

There exists, however, a "special and small category" of cases in which a state law cause of action can give rise to federal-question jurisdiction because the claim involves important federal issues. *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699 (2006). Plaintiff suggests that its case fits into this category because it is "not a garden variety contract dispute regarding the contract itself, but a case of exclusive Federal jurisdiction that requires a Federal court, not a state district court, to apply Federal rules and regulations that only govern AmeriCorps commissions and providers." Doc. 25 ¶ 14. Though the Supreme Court has repeatedly reaffirmed the viability of this "special and small category," a precise definition of its contours remains elusive. There is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between non diverse parties." *Grable,* 545 U.S. at 314, (internal citation omitted) (quotation marks omitted); *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first.").

Nonetheless, the Supreme Court has provided some guidance as to what makes a federal issue sufficiently "substantial" to warrant federal jurisdiction. Specifically, the Court has explained that federal jurisdiction will lie over a state law cause of action if the face of the complaint reveals a "federal issue [that] is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in a federal court without disrupting the federal-state balance of power." *Gunn,* 568 U.S. at 258. Assuming *arguendo* that Plaintiff's federal issue is necessarily raised, actually disputed, and not disruptive to the federal-state balance of power, the analysis here focuses on whether the federal issue is sufficiently "substantial" to warrant federal jurisdiction.

The Supreme Court has emphasized that the "substantiality" inquiry is wholly separate from the "necessary" inquiry and demands that a federal question must be not only important to the parties, but important to the federal system. In *Gunn,* for example, the Court explained that for a case to be "substantial in the relevant sense" it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raises' a disputed federal issue. The substantiality inquiry looks instead to the importance of the issue to the federal system as a whole. *Id*. at 260 (citation omitted). An issue may be substantial where the outcome of the claim could turn on a new interpretation of a federal statute or regulation that will govern many cases. In other words, a case is more likely to be important to the federal system as a whole if it presents "a nearly 'pure issue of law ... that could be settled once and for all'" rather than an issue that is "fact-bound and situation-specific" and whose holding will more likely be limited to the facts of the case. *See Empire Healthchoice,* 547 U.S. at 691 (quoting R. Fallon, et al., Hart and Wechsler's The Federal Courts and the Federal

System 65 (2005 Supp.)); *see also Gunn,* 568 U.S. at 262 (noting that the federal issue in dispute was not important because its resolution was unlikely to have any impact on other patent cases).

A federal issue also may be substantial where the resolution of the issue has "broader significance ... for the Federal Government." *Gunn,* 568 U.S. at 260. Because the Government has a direct interest in the availability of a federal forum to vindicate its own administrative action, the Court has repeatedly suggested that a federal issue is more likely to be substantial where a claim between two private parties, though based in state law, directly challenges the propriety of an action taken by a federal department, agency, or service. *Empire Healthchoice,* 547 U.S. at 700 (discussing *Grable*). Notably, that is not the case here, as Plaintiff does not allege that the federal agency, CNCS, was involved in its termination or disgorgement proceedings.

The Supreme Court's rejection of jurisdiction in *Empire Healthchoice* is instructive. That case involved a contract dispute between a private health insurer and a federal employee. The insurer entered into a contract with the Office of Personnel Management ("OPM") to provide a fee-for-service health plan for federal employees, pursuant to the Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. § 8901. The insured enrolled in the health insurance plan, agreeing to abide by the terms and conditions in the statement of benefits, which included a reimbursement and subrogation clause. The dispute arose after the employee, who had been injured in an accident, won a state court tort suit against the party responsible for his injuries. *Empire Healthchoice Assurance*, 547 U.S. at 701. The insurer claimed that under the terms and conditions established in the plan that it negotiated with OPM, the insurer was entitled to be reimbursed for the money it spent to cover the employee's medical bills following the

accident. *Id.* The employee disagreed and refused to repay the insurer. *Id.* Despite the involvement of a federal agency in the creation of the contract terms in dispute and the federal funds involved, the Supreme Court concluded that the federal issues in the case were not sufficiently substantial to warrant federal jurisdiction over the state law reimbursement claim. *Id.* at 700. Though the Court admitted that the federal government undoubtedly had an "overwhelming" interest in attracting and retaining healthy federal employees, the Court concluded that such an interest did "not warrant turning into a discrete and costly 'federal case' an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation." *Id.* at 701.

Given the holding in *Empire Healthchoice*, which involved the interpretation of contract terms negotiated by a federal agency and applied to health policies held by four million federal employees, the Court concludes that the instant dispute, which similarly concerns the demand for reimbursement of funds expended by one of the parties to the contract but where the federal interest is unquestionably less significant, does not fit into the "special and small" category of state law cases that "arise under" federal law. Unlike the circumstances in *Empire Healthchoice,* the contract here was executed without much or any oversight from a federal agency. The level of federal government involvement in the contracting process was minimal when compared to that in *Empire Healthchoice.* Moreover, the statute at issue in *Empire Healthchoice* was designed to benefit the federal government by making the federal government an attractive, competitive employer. In contrast, the purpose of the AmeriCorps program was to provide assistance to states seeking to lower their student drop-out rate, a uniquely local concern. To be "substantial" under the Court's opinion in *Empire Healthchoice,*

the dispute must involve a true risk to the interests of a federal agency, program, or statutory scheme. The instant case presents no such risk. The nature of the federal interest at stake here is not sufficiently substantial to displace state law. Accordingly, this is not a case, where, because the claims involve important federal issues, a state law cause of action gives rise to federal-question jurisdiction.

C.   Because It Lacks Jurisdiction, the Court Will Dismiss This Action Without Prejudice.

As a rule, when an action is dismissed for lack of subject matter jurisdiction, it is dismissed without prejudice, because the dismissal is not on the merits. *See Polaski v. Colorado Dep't of Transp.*, 198 F. App'x 684, 686 (10th Cir. 2006) ("a dismissal for lack of subject matter jurisdiction must be *without* prejudice") (citation omitted); *Craig v. United States*, 340 F. App'x 471, 475 (10th Cir. 2009) ("Because the court lacked jurisdiction to consider the merits of the case, however, it was precluded from making this merits-based determination, and dismissal with prejudice was improper."). "D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice."). "A suit dismissed for lack of jurisdiction cannot *also* be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render." *Id.* While the Court has gone to great lengths to clarify the various legal insufficiencies in Plaintiff's pleading, it has not rendered a judgment on the merits under Rule 12(b)(6). Accordingly, it will dismiss the Complaint without prejudice.

II.     Amendment to the Complaint

The Court will deny Plaintiff's request to file an amended complaint because Plaintiff has presented no grounds upon which to permit an amended complaint.  In addition to its willful choice not to serve Defendants with its complaint until six months after it was filed[12] and then only after the Court issued an order to show cause, Plaintiff next failed to respond to the motion to dismiss, which was filed 10 months ago,[13] and finally filed an out-of-time motion for extension of time without asserting any basis for excusable neglect or good cause.  Plaintiff offers no explanation for its delayed response and delayed request to amend the Complaint. The request is, therefore, untimely.  Plaintiff also failed to recite any facts in support of its request to amend, let alone any facts that it did not or could not have known when it filed the Complaint in 2018.

Because the Court does not have a motion to amend or a proposed amended complaint to consider, it cannot say unequivocally that an amended complaint would not suffer from the same jurisdictional problems as the original Complaint.  Notwithstanding, Plaintiff has offered no facts to suggest that an amended complaint would cure the present deficiencies in the complaint.  *See Walker v. Disner*, 50 F. App'x 908, 910 (10th Cir. 2002) (amending complaint futile where defendant's motion to dismiss was pending two months prior to plaintiff's motion

---

[12] On March 19, 2019, the Court ordered Plaintiff to show cause by April 2, 2019, regarding its failure to serve Defendants with a summons and the complaint.  Doc. 4.  On April 5, 2019, Plaintiff filed another out-of-time response requesting to amend its complaint; however, a motion to amend was never filed.  Doc. 6.  Defendants' motion to dismiss asserts they were served with an amended complaint, but the only complaint on file is the one filed on October 8, 2018.  Doc. 1.

[13] Plaintiff incorrectly assesses its responsibility to prosecute its case.  Its motion for extension of time states "[w]hile not filing a response may appear to justify the granting of the motion to dismiss . . . Plaintiff's Complaint should be allowed to proceed with or without a response."  Doc. 25 ¶ 18.

to amend the complaint, and plaintiff "did not detail the changes he sought to make in his amended complaint or offer any justification for the proposed amendment").

<u>CONCLUSION</u>

For the foregoing reasons, this Court lacks subject matter jurisdiction over this action, and dismissal without prejudice is warranted. Further, the Court finds that it is not appropriate to allow Plaintiff the opportunity to amend the Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 18) is **GRANTED**, as follows: the Complaint is dismissed in its entirety without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion for Extension of Time (Doc. 25) is **DENIED**.

_____
**MARTHA VÁZQUEZ**
**United States District Judge**